## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| Nicholas Amodeo, *on behalf of himself and all others similarly situated*, | : |
|  | : Civil Action No.: |
| Plaintiff, | : |
|  | : **CLASS ACTION COMPLAINT** |
| v. | : **JURY TRIAL DEMANDED** |
|  | : |
| GrubHub Inc., | : |
|  | : |
| Defendant. | : |
|  | : |

For this Class Action Complaint, the Plaintiff, Nicholas Amodeo, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

### INTRODUCTION

1.      Plaintiff, Nicholas Amodeo ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Defendant GrubHub Inc. ("Defendant" or "GrubHub"). Defendant sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A).

2.      Wireless spam is a growing problem in the United States.  In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. *See also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3.      GrubHub operates an online and smartphone application-based take-out food

delivery service.

4.  GrubHub sends automated text messages to consumers regarding orders placed with GrubHub for delivery.

5.  Inevitably, through entry of incorrect telephone numbers or consumers' numbers changing, consumers receive GrubHub's text messages unrelated to any food order placed or action taken by them.

6.  GrubHub does not allow such mis-targeted consumers to opt out of receiving future messages, resulting in consumers' repeated receipt of unwanted, unauthorized automated text messages.

7.  Auto-dialers are required by order of the Federal Communications Commission ("FCC") to provide an opt-out mechanism for consumers to discontinue receipt of automatically-sent calls and text messages. GrubHub's text messages not only fail to indicate how a recipient can opt out, they fail to acknowledge or implement consumers' direction that GrubHub "STOP" or "STOPALL."

8.  GrubHub's disregard for consumers' opt-out requests constitutes willful and knowing violation of the TCPA.

9.  Plaintiff is one such consumer. Plaintiff began receiving automated text messages from GrubHub on his cellular telephone despite never using GrubHub's service or providing it his cellular telephone number. Plaintiff contacted GrubHub in an effort to get the messages to stop. Plaintiff was advised by GrubHub to respond "STOP" or "STOPALL" to the messages to make them discontinue. Plaintiff did so but continued receiving GrubHub's automated text messages nonetheless, causing Plaintiff frustration, inconvenience, annoyance and cost. Plaintiff sues GrubHub for its TCPA violations individually and on behalf of all others

similarly situated.

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff is, and at all times mentioned herein was, an adult individual residing in Denver, Colorado.

11.     GrubHub is a Delaware corporation headquartered in Chicago, Illinois.

12.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendant resides in this district and because a substantial part of the events giving rise to the claim occurred in this district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

14.     The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS" or "autodialer").

15.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

16.     47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

　　(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

　　(B)     to dial such numbers.

17.     According to the Federal Communications Commission ("FCC"), an ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA,

2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

18.    "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, ¶ 132 (2003) ("2003 FCC Order") ("The basic function of [ATDS], however, has not changed—the capacity to dial numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.").

19.    Moreover, the FCC has made clear that it is a system's *capacity* to dial randomly or sequentially that determines whether it is an ATDS, not its "present ability." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, FCC 15-72, at ¶ 15 (July 10, 2015) ("2015 FCC Order"); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[T]he clear language of the TCPA 'mandates that the focus be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009))). In other words, "even when the equipment presently lack[s] the necessary software, it nevertheless [may have] the requisite capacity to be an autodialer." 2015 FCC Order, at ¶ 16.

4

20.     A piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition. 2015 FCC Order, at ¶ 18.

21.     The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis supplied); *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

22.     Merely obtaining a consumer's cellular telephone does not establish that such consumer has provided the caller prior express consent to autodial it.  Moreover, consumers may revoke prior express consent to receive autodialed calls "at any time and through any reasonable means," including "directly in response to a call initiated or made by a caller."  The burden is on the caller to prove it obtained the necessary prior express consent to autodial. 2015 FCC Order, at ¶¶ 47, 64.

23.     Specifically, automated text message-senders are required to "give consumers a direct opt-out mechanism such as a . . . reply of 'STOP' for text messages." 2015 FCC Order, at ¶¶ 47, 64.

24.     The FCC created a condition-laden exemption for one-time package delivery notification text messages.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Cargo Airline Ass'n Petition for Expedited Declaratory Ruling, CG

5

Docket No. 02-278, FCC 14-32, at ¶ 18 (Mar. 27, 2014) ("Cargo Airline Order").  Among the

conditions for exemption are that the automated messages provide a way for consumers to opt

out.

## ALLEGATIONS APPLICABLE TO PLAINTIFF

### A.  Text Messages Sent to Plaintiff

25.     Starting in 2016, Plaintiff began receiving text messages on his cellular telephone

from short-code telephone number 303-68 which stated they were from "GrubHub."

26.     The messages were sent to Plaintiff's cellular telephone number xxx-xxx-9588.

27.     Plaintiff has never used GrubHub's services.  Plaintiff never provided GrubHub

his cellular telephone number.

28.     The text messages received by Plaintiff stated that his "order" was being prepared

and would be delivered.  The messages did not correspond or relate to any "order" placed by

Plaintiff with GrubHub.

29.     Some of the messages referred to "Masterpiece Kitchen," with which Plaintiff is

unfamiliar.

30.     The text messages sent to Plaintiff's cellular phone by Defendant were made with

an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC.  The text messages were sent

automatically, without any human intervention in the actual drafting or directing of the message

to Plaintiff.

31.     The messages were composed of pre-written templates of text.  Indeed, several of

the text messages received by Plaintiff were identical or followed similar templates, for example:

> Hey, this is Grubhub!
> [RESTAURANT NAME] is
> Making your order right
> now.  If we had to guess
> how soon you'll be

eating, we would guess
pretty soon!

32.     Plaintiff repeatedly received messages following this exact template, including on December 2, 2016; December 23, 2016; December 31, 2016; and February 1, 2017.

33.     The text templates were automatically filled, with no human involvement, utilizing computer algorithms.  Using computer programming code, and replacing values, Defendant's computer programs convert the template text into messages like those received by Plaintiff.  Thus, what may have appeared to be a customized message was, in fact, created through a computer algorithm with no human involvement.

34.     The computer algorithms filled the text templates with data automatically obtained by GrubHub through either GrubHub's cellular telephone application or its website. GrubHub's text messaging system then automatically sent the templated messages to Plaintiff's cellular telephone without any human involvement in the drafting or directing of the message.

35.     Defendant obtained Plaintiff's cellular telephone number through means unknown to Plaintiff.   Upon information and belief, Plaintiff's cellular telephone number was obtained in connection with a GrubHub account. *See* https://www.grubhub.com/login (last visited Feb. 13, 2017) (allowing consumers to "sign in" to GrubHub's website).

36.     Defendant then stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and automatically messaged it any time an 'order' was placed on said account.

37.     No human directed any single text message to Plaintiff's number.

38.     The messages received by Plaintiff indicated no mechanism for Plaintiff to opt out of their continued receipt.

39.     Frustrated and inconvenienced by receipt of text messages he did not request or

take any action to cause, Plaintiff contacted GrubHub's online customer service in or around October of 2016. GrubHub advised Plaintiff to respond "STOP" an "STOPALL" to the text messages to get them to stop.

40. Plaintiff repeatedly responded "STOP" and "STOPALL" to GrubHub's text messages. GrubHub did not acknowledge Plaintiff's opt-out request. Plaintiff continued to receive GrubHub's text messages on a regular basis.

41. Plaintiff's time was wasted tending to GrubHub's text messages sent after he expressly requested, as directed by GrubHub, that they stop.

42. GrubHub's messages came at inconvenient times for Plaintiff. For example, one message received on November 10, 2016 interrupted a music lesson that Plaintiff was teaching as part of his line of work. Others received on December 23, 2016 interrupted a holiday dinner with family.

43. Receipt of Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

44. Defendant did not place the text messages for an emergency purpose.

**B.  Allegations Regarding the Capacity of Defendant's System**

45. The text messages sent by Defendant to Plaintiff's cell phone were sent with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC, in that Defendant acquired Plaintiff's number, stored it in a database connected to its telephonic or computer system, and then used its system to send text messages to Plaintiff's cell phone automatically and without human intervention.

46. No human was involved in the sending of Defendant's text messages to Plaintiff.

47. Defendant's system includes a computerized protocol for creating automated text

messages programmed to appear customized.

48.     A template for the messages sent to Plaintiff appears in Defendant's system in the following or a substantially similar form:

> Hey, this is Grubhub!
> [RESTAURANT NAME] is
> Making your order right
> now.  If we had to guess
> how soon you'll be
> eating, we would guess
> pretty soon!

49.     Using programming code, and replacing values, Defendant's computer programs then convert the template message into messages like those received by Plaintiff.  Thus, what appears to be a customized message is, in fact, done through a computer algorithm with no human involvement.

50.     Like any computer system, Defendant's computer-based text messaging system, which involves many computer servers equipped with multiple software applications, has the capacity to generate random numbers. See https://en.wikipedia.org/wiki/Pseudorandom_number_generator (last visited Apr. 20, 2016).

51.     Defendant's computer-based system likewise has the capacity to generate sequential numbers.

52.     For instance, it has the capacity to take any number, for instance 310-555-1212, consider it as a 10-digit integer 3105551212, add 1 to it, and get a new sequential phone number.

53.     Defendant's system has the capacity to store and dial the random or sequential numbers it generates just like it stored and dialed Plaintiff's number.

54.     In the unlikely event that Defendant's system does not already have the capacity to generate random or sequential numbers, that capacity can be trivially added.

55.     The following computer programming 'PHP'-language code could be added to

Defendant's system to generate random numbers:

```php
1  <?php
2
3  for ($randomNumber = mt_rand(1, 9), $i = 1; $i < 10; $i++) {
4      $randomNumber .= mt_rand(0, 9);
5  }
6
7  var_dump($randomNumber);
```

56.     This simplified PHP code would generate random numbers in Defendant's ATDS system.

57.     The Code would generate random numbers as follows:

```
1  string(10) "3446780111"
```

58.     The ability to generate sequential numbers could also easily be added to Defendant's system if it does not have it currently.

59.     For instance the following code could be added:

```php
1   <?php
2
3   $howManyYouNeed = 100;
4   $phonePrefix = 212;
5   $fromNumber  = 5551212;
6
7   for ($i = 0; $i < $howManyYouNeed; $i++) {
8       $phoneNumber = sprintf('%3d-%07d', $phonePrefix, $fromNumber+$i);
9       print $phoneNumber . "\n";
10  }
```



```
11
12    ?>
```

60.    The following sequential numbers would be generated:

212-5551212

212-5551213

212-5551214

212-5551215

212-5551216

212-5551217

212-5551218

212-5551219

212-5551220

212-5551221

212-5551222

212-5551223

212-5551224

212-5551225

212-5551226

212-5551227

212-5551228

212-5551229

212-5551230

212-5551231

212-5551232

## **CLASS ACTION ALLEGATIONS**

**A. The Class**

61.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf

of himself and all others similarly situated.

11

62.     Plaintiff represents, and is a member of the following class (the "Class"):

**All persons within the United States who, within four years of this Complaint, received on their cellular telephone at least one unauthorized text message from Defendant.**

63.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

## B.  Numerosity

64.     Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

65.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## C.  Common Questions of Law and Fact

66.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

      a.   Whether  Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

      b.   Whether  Defendant had prior express consent to send its automated text messages;

      c.   Whether Defendant's conduct was knowing and/or willful;

    d.   Whether Defendant is liable for damages, and the amount of such damages; and

    e.   Whether Defendant should be enjoined from such conduct in the future.

67.    The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.  Typicality**

68.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E.  Protecting the Interests of the Class Members**

69.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

70.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

71.    Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to:

*Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

72.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

73.     Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

74.     Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

75.     Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

76.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

77.     Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

• Defendant violated the TCPA;

• Defendant used an ATDS to send text messages to consumers; and

• Defendant sent messages to the Plaintiff and the Class without prior express consent.

14

## COUNT II
### Knowing and/or Willful Violations of the
### Telephone Consumer Protection Act,
### 47 U.S.C. § 227, et seq.

78.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

79.     Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

80.     Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

81.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

82.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

83.     Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an ATDS to message Plaintiff and the Class;

- Defendant knowingly and/or willfully disregarded Plaintiff and the Class members' requests that the automated text messages stop;

- Defendant knowingly and/or willfully messaged Plaintiff and the Class with text messages knowing it did not have their prior express consent to do so;

- It is Defendant's practice and history to place automated messages to consumers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Declaratory relief as stated;

3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

6. Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: February 17, 2017

Respectfully submitted,

By:     */s/ Sergei Lemberg*
        Sergei Lemberg, Esq.
        LEMBERG LAW, LLC
        43 Danbury Road
        Wilton, CT 06897
        Telephone: (203) 653-2250
        Facsimile:  (203) 653-3424
        *Attorneys for Plaintiff*